IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| John E. Thompson, | ) | Case Number: 2:08-CV-2423-PMD |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **DEFENDANT CDL PARTNERS, LLC'S** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| CDL Partners, LLC, | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendant/Third-Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Don Alvin Messervy | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | ) | |

### STATEMENT OF RELEVANT FACTS

This is a personal injury claim in which the Plaintiff asserts a cause of action for negligence and a violation of the South Carolina Residential Landlord and Tenant Act against Defendant CDL Partners, LLC ("CDL"). The suit arises from an accident which occurred in Charleston County, South Carolina, on July 19, 2006. Plaintiff fell from the second floor porch of an apartment building. As a result of the accident, Plaintiff alleges serious personal injuries in his complaint filed July 3, 2008.

CDL owns a three story apartment property located at 106 East Hudson Avenue, Folly Beach, South Carolina. (Ex. 1- Photo of building). CDL purchased the building from Don Alvin Messervy on August 28, 2004. Mr. Messervy constructed the building in 1996. The first story is garage space. The second and third stories contain two rental units each. There is a stairway in the front, mid-section of the building which leads to the second and third floors. Each stairway

landing opens up on wide full length porches on each floor. The porches are surrounded by railings.

Plaintiff, the sole tenant of apartment 2-B, was often seen by other tenants sitting in a chair on the porch with his feet on the rail while drinking beer. (Ex. 2- Mr. Karl M. Poruben, Jr. Dep., 18:25-19:17, October 22, 2008); (Ex. 3- Mr. Kenneth S. McDowell Dep., 25:16-20, October 22, 2008). Mr. Kenneth S. McDowell was a tenant of 106 East Hudson Avenue at the time of the accident. Mr. McDowell was the next-door neighbor of Plaintiff since he roomed with Mr. Polito in apartment 2-A. (Ex. 3, 7:25-8:5). Within two weeks prior to Plaintiff's fall, Mr. McDowell noticed the railing section in front of Plaintiff's apartment was dangling and had become partially disconnected from the rest of the porch. (Ex. 3, 24:23-25). Plaintiff told Mr. McDowell that he accidentally kicked out the railing. (Ex. 3., 25:20-26:11). Mr. McDowell attempted to repair the loose railing section. During the repair, Mr. McDowell noticed the wood of the railing was toe-nailed in the top and bottom to secure the railing to the porch. (Ex. 3, 24:16-25:12). Mr. McDowell reattached the railing to the porch the best he could. (Ex. 3, 27:5-15); (Ex. 4- Mr. John M. Thompson Dep., 77:22-78:1, November 20, 2008). Mr. McDowell later told Plaintiff not to put any pressure on the railing or to lean against it because it was not going to hold any weight and was not secure. (Ex. 3, 25:11-13, 27:5-15). After fixing the railing section, no one, including Mr. McDowell, Mr. Polito nor Plaintiff, provided any notice to CDL that the railing had broken or that Mr. McDowell had attempted to fix it. (Ex. 3., 27:24-28:9); (Ex. 5- Mr. James Polito Dep., 34:22-35:6, October 22, 2008); (Ex. 4., 77:22-78:5).

Mr. Karl M. Poruben, Jr. was the tenant of unit 3-B, above Plaintiff, at the time of the accident. (Ex. 2, 14:1-25). Two to three days prior to the accident, Mr. Poruben came home around 12:30 a.m. and saw Plaintiff sitting on the porch drinking a beer with Plaintiff's feet

propped up on the railing. When Mr. Poruben went to work the next morning he found the railing section had fallen on the hood of his Mustang. This incident is completely separate from the detached railing seen by Mr. McDowell. Mr. Poruben knocked on Plaintiff's door to ask him what happened to which the Plaintiff responded that he did not know. (Ex. 2, 23:1-23). Later that day, when Mr. Poruben returned from work, he witnessed Plaintiff carrying the railing up the stairs of the apartment building. Mr. Poruben offered his assistance to help with the repair, but Plaintiff refused. Mr. Poruben witnessed Plaintiff reattach the railing with finishing nails. (Ex. 2, 24:7-25:13). Prior to Plaintiff's fall, neither Mr. Poruben nor Plaintiff informed CDL that the railing fell on Mr. Poruben's car or that Plaintiff attempted to repair it. (Ex. 2, 24:1-6).

Two or three days after the railing incident, just past midnight and in the early morning of July 19, 2006, Mr. Poruben returned home. Mr. Poruben noticed Plaintiff lying in the driveway. (Ex. 2, 27:5-22). Mr. Poruben then noticed Plaintiff was hurt and helped him to Plaintiff's apartment in order to clean him up. (Ex. 2, 34:4-10). Mr. Poruben noticed a couple of empty beer cans next to Plaintiff's chair where the railing was missing. (Ex. 2, 30:11-17). Mr. Poruben noticed that Plaintiff reeked of alcohol. (Ex. 2, 32:12-13). Mr. Poruben described Plaintiff's apartment as in shambles, littered with empty beer cans and bottles as well as noticeable drug paraphernalia. (Ex. 2, 33:6-13, 34:21-25). Mr. Poruben believed Plaintiff was under the influence of some substance. (Ex.2, 27:25, 32:12-13).

Plaintiff suffered two broken arms and a head injury. Plaintiff claims permanent physical and mental injuries.

### STANDARD OF REVIEW

"Summary judgment is proper where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law." <u>Snavely v. AMISUB of South</u>

Carolina, 379 S.C. 386, 392, 665 S.E.2d 222, 225 (Ct. App. 2008); Rule 56(c), SCRCP; Hurst v. East Coast Hockey League, Inc., 371 S.C. 33, 36, 637 S.E.2d 560, 561 (2006). The moving party must establish no genuine issue of material fact exists, and the court must view the record in the light most favorable to the nonmoving party. Ward v. City of N.Myrtle Beach, 457 F. Supp. 2d 625, 628-29 (D.S.C. 2006). After the party seeking summary judgment shows a genuine issue of material fact does not exist, the opposing party "may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue." Knight v. Am. Nat. Fire Ins. Co., 831 F. Supp.1284, 1285 (D.S.C. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). "'[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate.'" Mitchell v. Sec'y Veterans Affairs, 467 F.Supp. 2d 544, 548-49 (D.S.C. 2006) (citing Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991)). "Summary judgment is not 'a disfavored procedural shortcut,' but an important mechanism for weeding out 'claims and defenses [that] have no factual bases.'" Id. at 549 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)). "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." Snavely v. AMISUB of South Carolina, 379 S.C. 386, 392, 665 S.E.2d 222, 225 (S.C. Ct. App. 2008); David v. McLeod Reg'l Med. Ctr., 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006).

## DISCUSSION AND ANALYSIS

### I. SOUTH CAROLINA RESIDENTIAL LANDLORD AND TENANT ACT

"[T]he South Carolina Residential Landlord and Tenant Act (RLTA) creates a right of action in tort for the breach of a duty owed by the landlord to the tenant." Watson v. Sellers, 299 S.C. 426, 432-33, 385 S.E.2d 369, 372 (Ct. App. 1989). Negligence actions may be brought under the RLTA. Nedrow v. Pruitt, 336 S.C. 668, 675, 521 S.E.2d 755, 758 (Ct. App. 1999). In order to establish a cause of action for negligence, the plaintiff most prove the following four elements:

> (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty.

Thomasko v. Poole, 349 S.C. 7, 11, 561 S.E.2d 597, 599 (2002).

With regard to rights of action for the breach of a duty owed by a landlord to a tenant, South Carolina Code Section 27-40-440(a) in part states:

> A landlord shall:
>
> (1) comply with the requirements of applicable building and housing codes materially affecting health and safety;
>
> (2) make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
>
> (3) keep all common areas of the premises in a reasonably safe condition, and, for premises containing more than four dwelling units, keep in a reasonably clean condition. . .

A landlord owes a non-delegable duty not to create unsafe conditions on the premises. Durkin v. Hansen, 313 S.C. 343, 348, 437 S.E.2d 550, 553 (Ct. App. 1993). There is no evidence that CDL created any unsafe condition.

Pursuant to South Carolina Code Section 27-40-610(a), noncompliance by the landlord with the rental agreement "materially affecting health and safety or the physical condition of the

5

property, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach. . ." Furthermore, "the RLTA explicitly creates a cause of action in tort for the failure of the landlord to repair a defect in the premises **after notice** is given as required by the Act. . ." Watson v. Sellers, 299 S.C. 426, 436-37, 385 S.E.2d 369, 375 (Ct. App. 1989) (emphasis added).

In this case, CDL was never notified as to the condition of the railing. Plaintiff has no proof of any notice and therefore cannot invoke the non-delegable duty of the RLTA. Other tenants in the building, who knew of the railing issues, never informed CDL of the condition prior to Plaintiff's fall. (Ex. 5, 26:1-4); (Ex. 2, 24:1-6); (Ex. 3, 27:24-28:3). Specifically, Mr. McDowell did not report to CDL the dangling railing section or his attempt to fix the broken railing, nor did Mr. Poruben report the railing falling on the hood of his Mustang and Plaintiff's attempt to repair the railing. (Ex. 3, 27:24-28:3); (Ex. 2, 21:1-5). Plaintiff never reported any alleged defective condition of the railing before his accident. (Ex. 4, 77:22-78:5, 115:13-15).

Pursuant to Watson, the RLTA creates a cause of action in tort when a landlord fails to correct a dangerous condition after being put on notice. Here, in light of undisputable facts, Plaintiff will never be able to establish that CDL was on notice any railing issue before Plaintiff's fall. Even though a landlord is charged with the duty, under §27-40-440(a), to keep the premises reasonably safe and make necessary repairs, a landlord cannot reasonably repair a defect if it does not have notice of the defect. In fact, the evidence demonstrates, Plaintiff is the only person aware of both instances in which the railing section became partially or completely detached. (Ex. 3, 25:11-13, 27:5-15); (Ex. 2, 26:23-27:4); (Ex. 4, 77:22-78:1). In this case, CDL was not notified of the condition of the railing prior to Plaintiff's accident.

6

CDL's Motion for Summary Judgment must be granted because Plaintiff is unable to show, now or ever, CDL breached its duty under the RLTA. Plaintiff is unable to demonstrate that specific material facts exist as to whether CDL knew of the loose rail prior to Plaintiff's accident. There is imply no evidence of notice to CDL.

"A landlord cannot serve as an insurer of the safety of every tenant." Pryor v. Northwest Apartments, Ltd., 321 S.C. 524, 529, 469 S.E.2d 630, 633 (Ct. App. 1996). "A possessor of land is not liable to his invitees for physical harm to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Meadows v. Heritage Village Church and Missionary Fellowship, Inc., 305 S.C. 375, 378, 409 S.E.2d 349, 351 (1991). The South Carolina Supreme Court held this is the same standard of care defined in the RLTA. Pryor, 321 S.C. at 529, 469 S.E. at 633. In Meadows, the invitee slipped and fell when she attempted to cross a wet grass lawn. The Court in Meadows held the land owner could not have foreseen the invitee crossing the wet grass lawn, and, therefore, did not owe the invitee a duty to warn of the possible dangerous condition. 305 S.C. at 378-79, 409 S.E.2d at 351-52. Similarly, in Pryor, a tenant broke her leg when she slipped in mud and straw while walking through a common area. The Court in Pryor likewise held the landlord did not breach his duty of care to warn because "the landlord could not foresee [the tenant] would choose to walk on the mud and pine straw rather than taking an alternate route." 321 S.C. at 529, 469 S.E.2d at 633.

Even though the facts of Meadows and Pryor are distinguishable from the case at bar, the common factors still remain that Plaintiff knew of the condition of the railing, and CDL could not have anticipated the danger of the railing because it did not have knowledge of its condition or that it was repaired twice by others within a very short time frame, with one repair made by

7

Plaintiff. Here, it is unreasonable for CDL, as a landlord without prior notice or knowledge, to foresee or anticipate, Plaintiff kicking out the railing, then choosing to lean against the railing Plaintiff knew was supposedly unstable and repaired on two previous occasions.

A landlord is not liable to tenants for physical harm to them by any activity or condition of the land whose danger is open and obvious to the tenant. Meadows, 305 S.C. at 378, 409 S.E.2d at 351; Larimore v. Carolina Power & Light, 340 S.C. 438, 445-46, 531 S.E.2d 535, 539 (Ct.App. 2000). If a tenant:

> knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so.

Creech v. South Carolina Wildlife & Marine Res. Dep't, 328 S.C. 24, 30-31, 491 S.E.2d 517, 574 (1997) (citing Restatement (Second) of Torts § 343A, Comment (e)). Invitees and tenants have a duty to discover and avoid open and obvious dangers. Green v. United States, 105 Fed.Appx. 515, 516, WL 1746699 (4th Cir. Aug. 5, 2004).

Plaintiff denies any recollection of the incidents reported by Mr. McDowell and Mr. Poruben. The denial in light of overwhelming independent evidence should not bar summary judgment when CDL breached no duty. Plaintiff's negligent repair was the activity which created the dangerous condition of the railing. Once Plaintiff and Mr. McDowell, each on two separate occasions, reattached the section of railing, without notifying CDL, they altered the condition of the railing. The repairs altered the section of railing in such a way to make it totally different from the section of railing in place at the time CDL bought the property. These acts effectively altered the railing. It was no longer the same railing as when CDL purchased the building and was an altered railing of which CDL had no knowledge. The mere fact Plaintiff

kicked out the section of railing himself, and repaired it himself, establishes that the condition was open and obvious to him. According to independent witnesses, Plaintiff was the only person aware of all three of the following: the railing dangling and subsequent repair by Mr. McDowell; the section of railing completely falling out unto Mr. Poruben's Mustang; and Plaintiff's reattachment of the section of railing. (Ex. 3, 25:11-13); (Ex. 2, 26:23-27:4); (Ex. 4, 77:22-78:1). CDL is not liable to Plaintiff because the condition of the section of railing was known to him at the time of the accident. CDL's Motion for Summary Judgment must be granted because the only independent evidence is that Plaintiff was aware of the condition of the section of railing before his fall.

"Accordingly, there [is] no evidence the landlord breached [its] duty of care. Summary judgment [is] therefore proper as a matter of law." Pryor, 321 S.C. at 529, 469 S.E.2d at 633. Here, Plaintiff is unable, now or ever, to establish evidence that CDL breached its duty of care. Summary judgment is appropriate in this matter because Plaintiff is unable to show a genuine issue exists as to any material fact.

Furthermore, under the RLTA, Plaintiff also owes duties to CDL. Section 27-40-510 states, in part, a tenant shall:

(1) comply with all obligations primarily imposed upon tenants by applicable provisions of building and housing codes materially affecting health and safety;

(2) keep the dwelling unit and that part of the premises that he uses reasonably safe and reasonably clean. . .

(6) not deliberately or negligently destroy, deface, damage, impair, or remove any part of the premises or knowingly permit any person to do so who is on the premises with the tenant's permission or who is allowed access to the premises by the tenant. . .

9

The South Carolina Supreme Court interpreted §27-40-510(2) as imposing a duty on a tenant "to keep the dwelling unit and that part of the premises that he use reasonably safe and reasonably clean." Fair v. United States of America, 334 S.C. 321, 323, 513 S.E.2d 616, 617 (1999).

The only evidence is that Plaintiff has breached subsections (2) and (6) of §27-40-510. Plaintiff used the porch regularly. Often he was seen by his neighbors drinking a beer while sitting in a chair with his feet propped on the railing. (Ex. 2, 18:25-19:17); (Ex. 3, 25:16-20). Plaintiff violated subsection (2) because he negligently repaired the railing, which amounts to failing to keep the part of the premises he uses reasonably safe. Plaintiff also violated subsection (6) because he negligently damaged part of the premises, the railing, by regularly placing his feet on it, which ultimately lead to the detachment of the railing, causing it to fall onto Mr. Poruben's Mustang.

Plaintiff's claims under the RLTA must be barred because he can establish no duty on the part of CDL and he breached his obligations and duties owed to his landlord, CDL.

## II. COMPARATIVE NEGLIGENCE

Equity and strong public policy require that one may not benefit from their own negligence. Horne v. Atlantic Coast Line R. Co., 177 S.C. 461, ___, 181 S.E. 642, 645 (1935); Keller v. Kiedinger, 389 So.2d 129, 133 (Ala. 1990); Wilby v. Gostel, 265 Va. 437, 443, 578 S.E.2d 796, 799 (2003); Int'l Marine Terminals, Inc. v. Johnson Bros. Corp. of La., No.: 86-0492 WL 13219 (E.D.La. June 26, 1987). "The authorities all agree that there can be no recovery where the action is brought in the name and for the benefit of one whose negligence has contributed to the accident." Richmond, F. & P.R. Co. v. Martin's Adm'r, 102 Va. 201, ___, 45 S.E. 894 (Ct. App. 1903); D R McClain & Son v. SBAM, Inc., 97 F.3d 1448, *3 n.3, WL 554434 (4th Cir. 1996).

10

In this case, if there is any duty breached, it is because Plaintiff negligently repaired the railing that he kicked out. (Ex. 2, 24:7-25:13). He also knew the railing was weak and was repaired before in a separate instance. (Ex. 4, 77:22-78:1); (Ex. 3, 25:9-16). Plaintiff reeked of alcohol and was most likely intoxicated at the time of the accident. (Ex. 2, 32:12-13). Plaintiff now seeks to benefit from his own negligence and negligent repair of the railing. To allow plaintiff to benefit from his own negligence would be inequitable and against public policy. Therefore, as a matter of law and public policy, Plaintiff's claims must be barred.

South Carolina is a greater comparative negligence state. The doctrine of comparative negligence reflects the public policy that no one should benefit from their own negligence. "Under comparative negligence, the plaintiff's contributory negligence does not bar recovery unless that negligence exceeds defendant's." Thomasko, 349 S.C. at 11, 561 S.E.2d at 599; Nelson v. Concrete Supply Co., 303 S.C. 243, 399 S.E.2d 783 (1991). Where a plaintiff's negligence, as a matter of law, is greater than a defendant's, the doctrine of comparative negligence bars the claim. Hopson v. Clary, 321 S.C. 312, 316, 468 S.E.2d 305, 308 (Ct.App.1996). "In a comparative negligence case, the trial court should only determine judgment as a matter of law if the sole reasonable inference which may be drawn from the evidence is the plaintiff's negligence exceeded fifty percent." Snavely, 379 S.C. at 395, 665 S.E.2d at 226; Bloom v. Ravoira, 339 S.C. 417, 422, 529 S.E.2d 710, 713 (2000).

"Generally, a comparison of the plaintiff's negligence with that of the defendant is a question of fact for the jury to decide." Snavely, 379 S.C. at 394-95, 665 S.E.2d at 226 (citing Bloom, 339 S.C. at 422, 529 S.E.2d at 713). However, "[i]f the evidence as a whole is susceptible to only one reasonable inference, **no jury issue is created**." Hopson v. Clary, 321 S.C. 312, 314, 468 S.E.2d 305, 307 (Ct.App.1996) (emphasis added); Snavely, 379 S.C. at 395,

666 S.E.2d at 226. "Under South Carolina jurisprudence, where evidence of the plaintiff's greater negligence is overwhelming, evidence of slight negligence on the part of the defendant is **simply not enough for a case to go to the jury**." Snavely, 379 S.C. at 395, 665 S.E.2d at 227 (emphasis added).

In this case, Plaintiff knew the railing was unstable and would not support his weight. He knew the railing was in a weak condition because he had knowledge the railing required two previous repairs, one of which Plaintiff performed himself. (Ex. 3, 24:23-25:16, 27:9-15); (Ex. 2, 24:7-25:13); (Ex. 4, 77:22- 78:1). Plaintiff was negligent because his conduct did not conform to what a reasonable person would have done under similar circumstances. Plaintiff was also negligent because he breached his duty, as a tenant, under the RLTA to keep the premises reasonably safe. CDL's motion for Summary Judgment must be granted because Plaintiff was exceedingly negligent as a matter of law.

Furthermore, Plaintiff assumed the risk of an accident when he leaned against the railing he knew was weak. Regarding assumption of risk in a comparative negligence case, the South Carolina Court of Appeals held:

> a plaintiff is not barred from recovery by the doctrine of assumption of risk unless the degree of fault arising therefrom is greater than the negligence of the defendant. . . [the] assumption of risk is no longer a complete bar to recovery under South Carolina's comparative negligence system. This determination is made by the court as a matter of law where the degree of fault arising from the plaintiff's assumption of risk exceeds any negligence on the part of the defendant.

Singleton v. Sherer, 377 S.C. 185, 206, 659 S.E.2d 196, 207 (Ct.App. 2008) (citing Davenport v. Cotton Hope Plantation Horizontal Property Regime, 333 S.C. 71, 87, 508 S.E.2d 565, 573-74 (1998)); Bloom v. Ravoira, 339 S.C. 417, 422, 529 S.E.2d 710, 713 (2000).

Plaintiff assumed the risk of this accident because he leaned against a railing he knew was weak. Plaintiff also assumed the risk because he knew the railing was repaired twice before

his accident. (Ex. 3, 24:23-25:16, 27:9-12); (Ex. 2, 24:7-25:13); (Ex. 4, 77:22- 78:1). Plaintiff's claims must be barred, under the doctrine of comparative negligence, because he was overwhelmingly negligent when he assumed the risk of leaning against the railing he knew was weak. CDL's Motion for Summary Judgment must be granted because Plaintiff's claims are barred as a matter of law.

It should be noted that deponents Mr. McDowell, Mr. Polito, and Mr. Poruben have no stake in this matter and have no incentive to influence the outcome. Additionally, Plaintiff states these witnesses have no reason to lie. (Ex. 4, 66:15-20). In contrast to Mr. McDowell's, Mr. Polito's, and Mr. Poruben's lack of bias, Plaintiff lies when it is convenient for him. For example, Plaintiff admittedly lied about his criminal history in an interview. (Ex. 4, 94:24-96:11). Plaintiff also admitted to lying at parties in order to avoid conversations about his occupation, or lack thereof. Id. Plaintiff denies being informed the section of railing was weak and was repaired by Mr. McDowell. (Ex. 4, 78:22-80:17). Plaintiff also denies he reattached the railing. (Ex. 4, 80:13-81:19). This testimony opportunistically contradicts the testimony of Mr. McDowell and Mr. Poruben, whose depositions were taken prior to Plaintiff's. (Ex. 3, 25:11-13, 27:9-15); (Ex. 2, 24:7-25:13). The absence of the fact witnesses' personal interest in this case compared to Plaintiff's willingness to lie when it is beneficial for him, establishes there is no material evidence which Plaintiff may present to establish a genuine issue of fact. CDL's Motion for Summary Judgment must be granted because Plaintiff is unable to show a genuine issue of material fact.

## CONCLUSION

CDL's Motion for Summary Judgment must succeed because CDL violated no duty. In the alternative, Plaintiff's claims are barred by the doctrine of comparative negligence as a

matter of law. Plaintiff is unable to show CDL was negligent **at all,** and, thus, cannot show CDL's negligence exceeded Plaintiff's negligence. The evidence taken as a whole establishes Plaintiff was overwhelmingly negligent. This Motion for Summary Judgment must be granted because Plaintiff is unable to establish, now or ever, genuine issues of material fact that CDL breached any duty.

                                        Respectfully submitted,
                                        COLLINS & LACY, P.C.

By:    s/Eric G. Fosmire
        ERIC G. FOSMIRE (Fed ID # 5952)
        ANDREW N. COLE (Fed ID # 8022)
        1330 Lady Street, Sixth Floor (29201)
        Post Office Box 12487
        Columbia, South Carolina 29211
        (803) 256-2660
        (803) 771-4484 (f)

        ATTORNEYS FOR DEFENDANT
        CDL PARTNERS, LLC

Columbia, South Carolina
January 21, 2009